UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                       )<br>)<br>JOSEPH ZAMPANTI, JR.                  )<br>) | Criminal No. 01-10254-NMG |

### DEFENDANT'S SENTENCING MEMORANDUM

Joseph Zampanti, age 55, appeared before Your Honor on December 13, 2004 and pleaded guilty to a two-count Information charging: Count One, Operating an Illegal Gambling Business (18 U.S.C. § 1955); Count Two, Money Laundering Conspiracy (18 U.S.C. § 1956(h)). The Information also contains a Criminal Forfeiture Allegation (18 U.S.C. § 982) for all property, real and personal, involved in the offense and all property traceable to such property including but not limited to $99,633 in U.S. currency, and a black Mercedes Benz 560SL.

### Guideline Calculations

The Probation Office had originally determined that the Adjusted Total Offense Level was 13, CHC III. In its addendum, however, Probation agrees that the appropriate calculation is Offense Level 13, CHC is II, entailing a guideline range of 15-21 months *See* PSR Paragraph 84. The defendant has no further objection to the guideline calculations. Pursuant to *United States v Booker*, No 040104, 2005 WL 50105 (U.S. Jan.12, 2005), in addition to considering the now advisory guideline calculation, the sentencing court is mandated to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances

1

of the offense and the history and characteristics of the defendant. We start with the defendant's characteristics.

### History and Characteristics of the Defendant

Joseph James Zampanti was born in Boston on June 5, 1950, to Italian-American parents who separated and divorced when the defendant was a teenager. The defendant and his three siblings remained with the mother who eventually remarried long after the children left the home. Although the father remarried shortly after the divorce, he has always remained in good contact with the defendant.

Zampanti attended East Boston High School until the 11th grade when he left to go to work. He did subsequently achieve a GED by attending night classes. Shortly thereafter he married his former wife when she was 23 and he was 20. Together they had two children. The defendant adopted his wife's first child (Ronald Zampanti) from a marriage that ended when her husband died prematurely. But after 25 years of marriage, the couple agreed to an amicable divorce. Zampanti continues to pay alimony and remains very close to his children and on good terms with his ex-wife. A friend of Zampanti's from teen years writes: "Even after he experienced problems in his marriage, he felt obligated and privileged, to continue caring for his wife and children. He is attentive to their needs and really values the relationship he has with the complete family." See Letter *Retired police Lieutenant Alfred Barzykowski*.

The Zampanti children provide testimony to his caring and devotion. The older daughter, Tracy Caeran, remembers her parents' divorce when she was sixteen years old. "As much as the break up hurt me, I can honestly say that my dad made sure our living arrangements were not jeopardized. He has always made sure that his children came out of this divorce okay...My father is truly the backbone of our family. He is such a wonderful grandfather to my

2

son...watches all of his baseball, hockey and football games." Zampanti valued work for all his children and encouraged Tracy to get a job, even at age 14. Zampanti showed up at her first day of employment at McDonald's, so emotionally proud of his daughter, she saw tears come to his eyes. See letter *Tracy Caeran.*

Zampanti's younger daughter echoes the sentiments of her sister Tracy. Both daughters understand that their father has committed a crime. In spite of this, they understand that he has strong values which he clearly has imparted to both of them. "I can't even start to express the influence he has had in my life as a child but especially as a young adult. He has very strong values which he has imposed on me as well as my brother and sister." See letter *Kristen Zampanti.*

The eldest of the three children, Ronald Zampanti, is also a co-defendant in the instant offense (prosecuted as a related case). Ronald is devoted to his father in spite of the problems encountered by his involvement in the offense. Ronald has stopped gambling and bookmaking and presently earns his living operating a nail salon. His wife divorced him as a result of the instant offense and in fear for her children. She remains supportive of Ronald and wrote a positive letter to the sentencing court in his behalf. Like his father, Ronald is devoted to his two children and plans to move closer to their home to more fully participate in their lives.

For the past ten years, Zampanti has shared a common-law relationship with Diane Porcaro. Ms. Porcaro is herself divorced with three children. Consistent with his love for his own children, Zampanti has become a surrogate father to Porcaro's children. All three write of his devotion to their mother, to them, and their children, and even their grandparents. See letters *Roxanne Schena, Alexis Bascon, Jessica Porcaro.*

Although the defendant has always worked at some legitimate occupation, he admits that he continually gambled for the four years between 1997 – 2001 when he earned a substantial portion of his income as a gambler with the aid of the internet program www.donbestports.com. His bookmaking also earned substantial sums for the three-year period 1997 – 2000 when he was arrested. For the past four years, Zampanti has earned much of his income in the real estate business in partnership with Diane Porcaro. (He has had other jobs during this period as well. See PSR ¶¶72, 73. The couple's real estate venture began in 1994 and they consider it now to be their main source of income. Ms. Porcaro says she knows that "Joe broke the law" but offers that he is now a changed man. "Joe puts his heart and sole into this business we started. It takes a lot of hours and patience to find the right properties and financing is not always easy....Rental properties take a lot of time and work to keep them going in the right direction. I do not know what I would do without Joe." See letter *Diane Porcaro*.

Zampanti has had the last four years to demonstrate to the court that he is a changed man who understands the damage done to society and the negative impact it has had on his own life.

### Nature and Circumstances of the Offense

Joe Zampanti spent his formative years in East Boston near Suffolk Downs Racetrack. In East Boston during the 1950s and 60s gambling was part of the culture and the negative aspects of illegal gambling had not yet been widely recognized as a problematic. None of this is offered an excuse, but as background to understanding Zampanti's offense. When he was about 30 years old, Zampanti began taking bets to supplement his legitimate income as a food vendor. *PSR* ¶76. The gaming business got a boost in 1997 when Zampanti discovered the internet program www.donbestsports.com. It was then that he too began to gamble seriously and to earn substantial sums as a bettor as well as a bookmaker. Zampanti admits that beginning in 1997,

4

most of his income was derived from gambling and bookmaking. As for his bookmaking, he wishes to point out that the Zampanti/D'Amelio operation had no element of coercion or threats as many gaming operations do. Also unlike many gamblers and bookmakers, Zampanti reported his gambling earnings on his income tax returns as "other income."

The defendant also notes that from 2001 to the present, the real estate endeavors now produce enough money to support himself and his other obligations. He no longer gambles on anything.

### Meeting the Purposes of this Sentence

As Joseph Zampanti stands now before the Court, the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C. §3553(a)(2) i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. (B) to afford adequate deterrence to criminal conduct. (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Noteworthy is the manner in which the Sentencing Commission incorporated the purposes of (A), (B), and (C) into the Guidelines:

> A defendant's record of past criminal conduct is directly relevant to those purposes [§ 3553(a)]. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation. *USSG Ch.3, Pt.A, intro.comment.*

The Commission acknowledged that it had made no definitive judgment as to the reliability of then existing data and promised to review additional data insofar as they became available. *Id.*

5

To that end, the Commission conducted a study released in May 2004: <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines.</u>[1] "Using data collected from the guideline federal offenders sentenced in fiscal year 1992, the current study examines in detail the predictive statistical power of the criminal history measure..." *Recidivism study pg 2.*

Among other issues, the report concludes that "Criminal history points represent the purest form in which the guidelines measure recidivism risk. The CHC is not as pure in its form because the CHC is an aggregation of points into one of only six categories." *Id* pg 7. In general, as the number of criminal history points increase, the risk of recidivating within two years increases. *Id* pg 8. This conclusion is illustrated in a chart that shows defendants, like Zampanti, with two criminal history points were re-convicted at a rate of 7.5%[2] during the first two years of supervision. This rate compares favorably with defendants who have three or more criminal history points up to defendants with 20 points or more who recidivate at rate of 59.3%. *id* Exhibit 4, pg 23.

Another gauge to consider is the fact that recidivism rates decline relatively consistently as age increases. Among all offenders under age 21, the recidivism rate is 35.5%, while offenders over age 50 have a recidivism rate of 9.5% *Id* pg. 12. Other factors that bode well for the defendant's very low risk to recidivate are listed in the study at pg 12 and include Employment Status, Marital Status, and absence of illicit drug use. Data show that those with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%)

---

[1] This study is available online at the Commission's website, www.ussc.gov/publications/research.
[2] The Commission study measured recidivism in two ways. The primary definition included: a re-conviction for a new offense; a re-arrest with no conviction disposition information available on the post-release criminal history record; or a supervision revocation (probation or post prison supervision). *Id* pg 4. Defendants with two criminal history points in the primary category recidivated at a rate of 21.9%.

6

than are those who are unemployed (32.4%). Zampanti has always worked, even leaving high school in order to work. Since 1994, he began a new career in real estate.

Offenders who have never been married are most likely to recidivate (32.3.%). Zampanti, although presently divorced from his first wife, maintains a common-law relationship with Diane Porcaro. The couple has been together for ten years and for all practical purposes are married. The data show that those who are married are only slightly less likely to recidivate (13.8%) than are those who are divorced (19.5%).

Yet another predictor of re-offending is illicit drug use. "Overall, offenders using illicit drugs within one year prior to their instant offense have a higher recidivism rate (31.0% than those not using illicit drugs (17.4%)." *Id* pg 13. Zampanti has never had a drug problem. *(PSR ¶67)*

In reviewing Zampanti's Presentence Report, it is remarkable that he has at least five indicators that make him very unlikely to recidivate. Indicators further support the proposition that there is no need to protect the public from further crimes of the defendant, nor does he need to be incarcerated as a deterrent. Fortunately, the defendant has never been addicted to gambling. The defendant has completed rehabilitated himself as his interest and ambition shifted from the gaming business to the real estate business. It can be said unequivocally, that the defendant is in no need of any rehabilitation or treatment. Moreover, the defendant's demonstrated remorse and disavowel of his past criminal activities combined with his manifest desire to more fully live up to his children's assessment of his virtues make him a virtual certainty to continue as a productive member of the community.

Finally, it is worth noting that the defendant's two partners in the gambling business have both been sentenced to Probation. All three admit equal culpability.

All things considered, the defendant submits that a non-jail sentence meets all the purposes of sentencing as mandated by 18 U.S.C. §3553(a) and provides a just punishment that fits this crime and this defendant.

_____
JOHN M. MOSCARDELLI, BBO #357340
Peters & Moscardelli
Eight Winter Street, 12th Floor
Boston, MA 02108
Tel. (617) 423-6222
Attorney for Defendant, Joseph Zampanti, Jr.

DATED: July 21, 2005

## CERTIFICATE OF SERVICE

I, JOHN M. MOSCARDELLI, counsel for the defendant, Joseph Zampanti, Jr., hereby certify that I have this day served a copy of the foregoing motion upon Assistant United States Attorney Ernest S. DiNisco of the United States Attorney's Office, United States District Court, One Courthouse Way, Suite 9200, Boston, MA 02210 by mailing the same, postage pre-paid.

To Whom It May Concern:

I am writing to you on behalf of Joe Zampanti. Joe has been a big part of my life and the lives of my family for the past ten years. From the time that he began dating my mother, he has always treated me with love, kindness, and respect. He has been like a father to me and my sisters, and now a grandfather to their children. He has always been there for me and my sisters ready to help at a moment's notice, to advise when we are troubled, and pick up the pieces in times of need. Joe is a caring man who is wonderful with my mother's parents and treats them as if they were his own. Actually, he has always treated all of us as if we were his own. I could not ask for a better partner for my mother or father figure for my sisters and myself.

I feel that at this point in our lives, to remove him for any length of time from our family, wouldn't just be sad and difficult for us as adults, but detrimental to the lives of his grandchildren in which he plays huge role. Please take into consideration the amount of time that has passed, the changes he has made in his life, and the positive impact he has had on our lives and all the lives he has touched over the years.

Thank you for your time and consideration in this matter.

Sincerely,

*Jessica Porcaro*

Jessica Porcaro

May 16, 2005

Your Honorable Justice:

My name is Tracy Caeran. I am the daughter of Joseph Zampanti. He will be standing before you for sentencing.

I am not writing this letter to minimize my father's crime, but rather, reveal the wonderful father, grandfather and man standing behind these charges.

My father is truly the backbone of our family. He is such a wonderful grandfather to my son. He watches all of his baseball, hockey and football games.

My father always brought us up with extremely important values. When I was a young teenager (14) my dad convinced me that it would be a good idea to start working part time after school. I took on my first job at McDonald's. I will never forget the first day of employment. My dad showed up at McDonald's and placed an order with me and while doing so he had all tears streaming down his face. He is a very emotional and gentle man.

My dad and mom spilt up when I was sixteen years old. As much as the break up hurt me, I can honestly say that my dad made sure our living arrangements were not to be jeopardized. He has always made sure that his children came out of this divorce okay. This is the type of man my dad is.

My father has started a new life for himself. He is now buying and selling real estate and spending most of his time in Florida. When in Florida my dad calls every night to speak with my son and me and when back in Boston his time is spent with his grandchildren.

Your honor, I believe my dad has learned his lesson and is making a new life for himself. I ask that you take this into consideration when sentencing him.

Sincerely,

Tracy Caeran

MAY-18-2005 WED 08:4E AM                           FAX NO:                              P. 01

May 16, 2005

To the Honorable Judge,

My name is Kristen Zampanti, my father is Joseph Zampanti and is coming before you for sentencing in the near future. I feel compelled to say a few things about my father. I can't even start to express the influence he has had in my life as a child but especially as a young adult. He has very strong values which he has imposed on me as well as my brother and sister.

I am getting married on June 4th and will be starting a family. I want my father to be a role model and mentor for my children as he was for me. He is a caring, loving and gentle man.

The charges you have before you do not describe my father. He has made mistakes, however, I feel he has learned from them. Selfishly I am pleading mostly for myself, but, as well as the people who surround me.

Your honor, I am not trying to minimize the crime, please look at the person before you, before you determine your sentence.

This is heart felt, I am begging you for leniency.

Thank you for your time and consideration.

Sincerely,

Kristen Zampanti

To whom this may concern:

I've been asked to write a letter about what kind of person Joe Zampanti is, to say that it could be summed up in a page would be impossible. Joe is to wonderful of a person to put into words, but I will try my best. I've known Joe for over ten (10) years, and in that time a lot of my life has been lived. He has always been there for me when I've needed him. He loves my children as if they were his own. I am a mother of three (3) children under the age of five (5). I worry daily of the terrible things that could happen to me or my family, I watch the news and get horrified of the things that happen to little children, women, elderly, and animals. I think to myself how can Joe be considered a criminal although for a different crime still the words are the same. In my opinion Joe is someone you would want in your own family not behind bars being punished like a true criminal should be.
Joe is a wonderful person who believes in family values and that is what we need In this society today. To make this place a little normal at least for my little family.

Sincerely,

*Alexis Bascon*

Alexis Bascon

May 19, 2005

To Whom it may concern:

My name is Diane Porcaro I would like to tell you a little about Joe Zampantis' life..I have known Joe since 1993.

Joe is a wonderful person. When we first started dating, my friends would say "Is he Real!"
He is kind and considerate of everyone. He is the type of person I would want for each of my daughters to marry.( Luckily two have wonderful husbands)
He treats my daughters as if they were his own. My youngest daughter has 3 very young children. Joe is Puppi to them. They love him dearly. When ever I see them, they always ask , Where is Puppi? He takes them for walks and plays football with the 5 year old, trucks with the 18 month old and dolls with the 3 year old. He never complains when we babysit ( a lot) for he knows my daughter and her husband work long hours just to make ends meet.
I know Joe broke the law before. But, he is a changed man now.
We started Real Estate together in 1994. Just to get our foot in the door, to see where it would take us. I took out an equity loan on my home. We purchased a condo in Florida to rent out. It worked. We leased a building to start a family business. One year later we took out a mortgage on the same building(our landlord held the mortgage for us, and still does.)
Joe and I have always been self- employed We do not have a pension to look forward to.
Joe does not have medical insurance. He has High Cholesterol and has to pay for his prescriptions. He also has back problems. I pay over $400.00 a month for my medical insurance though my daughters business where I work part-time. So.... we have continued to take out Equity loans and second mortgages on properties we own for down payments for other investment properties. Joe puts his heart and sole into this business we started. It takes a lot of hours and patience to find the right properties and financing is not always easy. Luckily, for us the real-estate market has been on the rise and we are very busy trying to get ahead for our future. Rental properties take a lot of time and work to keep them going in the right direction. I do not know what I would do without Joe.

He is the one who always says WE CAN DO THIS when I have my doubts.

We have to take risks some times and I get cold feet. He is right, if we do not go ahead with properties we will not have much of a future. I need Joe with me, my children need Joe. His children need him and all of his grandchildren need his input in their lives. We would miss him terribly if he has t go away.
I appreciate the time you take to read this letter. I hope it helped in someway, for I know you do not know Joe the way his family and friends do. There is no way for you to know unless someone tells you what a wonderful man he is and how hard he is trying to make a new life for all of his loved ones.

Sincerely Yours,
*Diane Porcaro*
Diane Porcaro

Alfred Barzykowski 133 warren Street
Revere, Mass. 02151  781-289-6457

To Whom It May Concern;                                        May, 2005

My name is Alfred Barzykowski and I am a retired police Lieutenant from the Chelsea Police Department where I served for 32 years. I served as a watch commander, the commander of their tactical team and I retired as the Supervisor of the Criminal Investigation Bureau.

I have known Joseph Zampanti since his early teens, almost 40 years, and I watched him grow and mature into what I believe him to be; an intelligent, considerate, compassionate man. He exhibited these qualities as he matured into adulthood and I watched him grow and marry and was impressed with his devotion and commitment to his family. He exhibits great family values and thinks of his family as the most important part of his life.

Joseph has carried over these qualities in his endeavor to provide for his family. He is very active and knowledgeable about real estate. He has utilized this knowledge to his advantage in acquiring real estate and rehabilitating the properties and than selling them. He applies common sense and logic to problems he encounters and emerges from them with solutions that reflect the effort he put into them.

Even after he experienced problems in his marriage, he felt obligated and privileged, to continue caring for his wife and children. He is attentive to their needs and really values the relationship he has with the complete family. These values he exhibits are just a part of the complete man he has molded himself into. He is proud of his ability to care. And this pride is reflected in the way he conducts himself with people he interacts with on a daily basis.

Over the course of the many years we have know each other he has never asked for any consideration or influence I may have been able to render to help him in his crisis's. For this he has earned my respect as a self-sufficient able man who is able to recognize the importance of dealing with the consequences of life's curves that were thrown at him.

Alfred Barzykowski

Dear your Honor:

My name is Roxanne Schena and I'd like to tell you about my relationship with Joe Zampanti. My mother has dated him for over ten years and in that time I've gotten to know Joe quite well. I have always looked at Joe as a role model and as a father. He cares deeply about his family and family values. He has three children of his own and he has always treated me the same as them. He considers me his daughter and that is such a wonderful feeling. Anyone who has met him or knows him will always tell you the same thing. What a wonderful guy, and he truly is. He is fun to be around, considerate, and truthful. I've never seen him lose his temper, get mad, or even upset. He is always so full of life, enjoys company and would do anything for anyone. He has always been there for me, my mom, and my sisters. He is absolutely wonderful to my grandparents who are 85 yrs. old and 97 yrs. old he treats them as if they were is own parents. This is not the type of person I would say is a criminal and if you got to know him as an individual yourself you too would love a JOE in your family. Yes I am aware of the crime he has a committed and although it is illegal in this state, I can't consider him a criminal. There are terrible people who need to be put away and Joe is not one of them. I am aware he is not the same type of criminal those animals are, but to use the word criminal in the same sentence as Joe is ludicrous he is such a wonderful person, someone who this society needs out here on the street, in our world, that makes us feel safe, and happy. I may be rambling at this point but it is hard to put so many wonderful feelings into words about a person such as Joe.


Thanks for listening to me,
Roxanne Schena



### Sports Medicine & Rehab

CC: Joe Zampanti
    425 Bayshore Drive
    Ft. Lauderdale, Florida 33304

April 22, 2005

To Whom It May Concern:

     Mr. Zampanti is currently being treated in this office for injuries which began in February of 2004. Mr. Zampanti is suffering from Sciatica, Lumbago, and Cervicalgia. His treatment is consisting of joint mobilization techniques, moist heat, electric stimulation, and therapeutic massage. Mr. Zampanti is responding well to treatment; however his injuries are still symptomatic and are affecting his daily routine. It is recommended that Mr. Zampanti refrain from lifting heavy objects, perform any tasks requiring bending or lifting, and from being subjected to sitting or standing for any prolonged length of time for the possibility of re-exacerbating his injuries. If you have any questions, please feel free to contact the office directly at 954-491-4437.

Sincerely,

Dr. Keegan J. Roper
Chiropractic Physician

kjr/ad